## Levi Rice, Administrator &c. *versus* Samuel Woods *et al.*

A partnership consisting of W, B, S and S, doing business in one town under the name of W, S & Co., and in another under the name of B & Co., made three promissory notes in the name of W, S & Co. to the plaintiff's intestate.  This partnership was dissolved, and thereupon B, S and S formed a new company, *doing business in both places under the name of B & Co.*, and became indebted to the intestate in the sum of $100·78.  The new company soon after assigned their property in trust for the payment of their creditors, and in a schedule of the creditors and of the sums due to them respectively, annexed to the indenture of assignment, was the name of the intestate, with the sum of $100 set against it.  By the indenture, the creditors who became parties to it " release unto the said B, S and S, and each of them, the several debts and sums of money, written opposite to their respective names, in the schedules hereto annexed."  It was *held*, that construing the indenture by itself, the intestate, by executing it, released only the sum set against his name, and that parol evidence to show that the notes were intended to be embraced by the release, was inadmissible.

Upon a case stated it appeared, that this action was assump sit upon three promissory notes, the first dated March 25, 1833, for $43·90, the second, July 15, 1833, for $40, and the third, October 28, 1833, for $79·75, signed by Woods.

Stevens & Cc and given by them to the plaintiff's intestate, each note being on interest from its date.

At the time of giving the notes the firm of Woods, Stevens & Co. consisted of S. Woods, S. S. Stevens, E. G. Stimson and J. O. Bancroft. They were concerned in trade as country merchants, and in the manufacture of potashes and furniture. They transacted business at Ashburnham under the firm of "Woods, Stevens & Co." and at Boston under the firm of "J. O. Bancroft & Co." It was not generally known in Ashburnham, where the plaintiff's intestate lived, that they had any other style of partnership than that of Woods, Stevens & Co. This copartnership was dissolved on the 1st of January 1834, and notice thereof was published in a newspaper. By the contract of dissolution, Woods agreed to pay one debt of the firm for $3785·68, and the other partners undertook to pay the rest of the debts.

A new copartnership was immediately formed by Bancroft, Stimson and Stevens, under the name of J. O. Bancroft & Co., and they continued in business in Boston and Ashburnham, until the 21st of February 1834 ; at which time, by an indenture of assignment, made at Boston, the company assigned all their property to certain persons, in trust to pay to the creditors, parties to the deed, the sums set against their respective names in schedules annexed to the deed.

Between the time of the dissolution of the first copartnership and the making of the assignment, the new company became indebted to the plaintiff's intestate in the sum of $100·78, on account for labor, which he entered in his book under the name of Woods, Stevens & Co. ; and during the same time the new company made charges against him to the amount of $8.

The indenture, at the time when it was presented to the plaintiff's intestate for his signature, had upon it the names of a large number of creditors of both companies, with certain sums set against them respectively, a great proportion of these sums being debts due from Woods, Stevens & Co. ; but there was no evidence that the intestate knew, at that time, that any of the creditors or debts were those of Woods, Stevens & Co. He found his name written there, and against it

was set the sum of $100. At first he objected to signing it, alleging that the assignors owed him more than the sum set against his name ; that they owed him three or four hundred dollars in all. He was thereupon referred to a clause in the indenture, as follows : " And it is further agreed, that if any debt shall, by mistake or accident, have been omitted, or the amount of any debt contained in any of the schedules annexed shall be mistaken, the same may be rectified and the true amount inserted by producing satisfactory evidence of the true amount to one person of each of the three parties hereunto." In about a month afterwards the intestate called upon the person holding the indenture, and signed it without saying any thing.

Subsequently the intestate was called upon to make out a statement of his claims against the company, and he made out one embracing the notes included in this suit, a small balance of about $8 due to him from Woods, Stevens & Co., and the sum of $100·78 due to him from J. O. Bancroft & Co. The assignees declined allowing the whole of this amount, but said they were willing to allow the sum of $100 set against the intestate's name, alleging that they could not make any alterations of the sums originally set against each name.

In paying out dividends the assignees made no distinction between debts due from Woods, Stevens & Co., and those due from J. O. Bancroft & Co.

The indenture contains a provision, by which the creditors who become parties, "remise, acquit, discharge and release unto the said Bancroft, Stimson and Stevens, and each of them, his heirs, executors and administrators, the several debts and sums of money written opposite to their respective names in the schedules hereunto annexed, and all actions, claims and demands on account thereof, of every kind and nature whatsoever."

A nonsuit or default was to be entered, or the case set down for trial by a jury, as the Court might direct.

*Oct. 6th.*    *Washburn*, for the defendants, contended that the terms of the release were broad enough to release Stevens, Stimson, and Bancroft, and consequently Woods, from the demands in suit, and that parol evidence was inadmissible to control this effect ; *Ward* v. *Johnson*, 13 Mass. R. 151 ; *Emerson* v.

*Knower*, 8 Pick. 63 ; but that if there were a latent ambiguity, it was competent to show by parol evidence, that the intestate intended to include these demands in his release ; Roscoe on Ev. 12.

*Torrey* and *Wood*, for the plaintiff, cited as to the effect of the release, *West Boylston Manufacturing Co.* v. *Searle*, 15 Pick. 225 ; *Deland* v. *Amesbury &c. Co.* 17 Pick. 244 ; *Lyman* v. *Clark*, 9 Mass. R. 235 ; *Butcher* v. *Butcher*, 4 Bos. & Pul. 113 ; and as to the intestate's error in making his charges against the old firm, *Barker* v. *Blake*, 11 Mass. R. 16.

MORTON J. delivered the opinion of the Court. The only ground of defence is, that the notes were discharged by the release contained in the indenture of assignment. Three of the defendants, viz. Bancroft, Stimson and Stevens, as assignors, the persons named as assignees, and certain creditors of the former, were the parties to this instrument. By this, the several creditors, who became parties to it, did *" remise, acquit, discharge and release unto the said Bancroft, Stimson and Stevens, and each of them, his heirs, executors and administrators, the several debts and sums of money, written opposite to their respective names, in the schedules hereto annexed, and all actions, claims and demands on account thereof, of every kind and nature whatsoever."* This release manifestly was intended to apply to the debts of Bancroft, Stimson and Stevens. But the language is broad enough, in its natural import, to include debts which they might owe jointly or severally with other individuals, as well as debts due from themselves. And a release of a debt of one of several joint debtors, would undoubtedly discharge all of them.

*Oct. 8th.*

But this release contains another important limitation. It is not a general discharge of all debts due from the assignors to these several creditors, but of certain debts specifically described — of *" the several debts and sums of money written opposite to their respective names "* and of all actions, &c. *" on account thereof."* It must therefore be understood to apply to the debts designated in the schedule, and to no others. If a creditor having several debts, had, against his name, clearly described one of them, the others would, of course, be

excluded from the operation of the indenture. The only question, therefore, in the present case, is whether the notes, now in suit, are included in the debt set against the intestate's name.

This must depend upon the construction of the written instrument itself. We cannot look elsewhere for the intention of the parties. Here is no latent ambiguity which may be aided by the introduction of parol evidence. The proof, therefore, that the plaintiff's intestate objected to signing the indenture because the sum named was not large enough to cover all his claims, was inadmissible. But if we were at liberty to go out of the instrument, we should find that the opinion of the assignees, that the present demands were not included, would countervail the opinion of the intestate that they were ; and both together illustrate the propriety and wisdom of the rule by which both are excluded. *Deland* v. *Amesbury W. & C. Manuf. Co.* 7 Pick. 244.

All external objects, however, to which the written agreement may apply or upon which it may operate, may and usually must be proved *aliunde*. Here is no description of the debt or of the obligation by which it was secured, nor of any other thing by which it might be identified, except the amount and the persons from whom it was due. The fact that the intestate had a debt due from the assignors for very nearly the amount named in the schedule, may legally be proved, and is of importance in determining the meaning of the release. If he had held no demand against them but the one evidenced by the notes in suit, doubtless, to give effect to the instrument, we should construe it to extend to this, notwithstanding the discrepancy in the amounts. *Emerson et al.* v. *Knower*, 8 Pick. 66.

But inasmuch as the plaintiff had a demand against the assignors corresponding in amount with the one mentioned in the schedule ; inasmuch as the addition of the sum now in suit, would swell it to nearly three times the amount ; and inasmuch as the one was against the assignors and the other against them with another individual, and secured by notes signed by the name of a different firm, we cannot doubt that the one, and not both, was intended to be included in the release.

The improbability that the plaintiff, upon the assignment of the property of *three*, would have released his demands against *four*, and the circumstance that the debt released is described as due from the *three*, and not the *four*, confirm the above construction of the release.

If the plaintiff had claimed a dividend on the demand in suit, as well as the other, the assignees might well have said that these notes were not described in the schedule, and, in justice to the other creditors, they could not pay a dividend on *three hundred* dollars, when the amount named was only *one hundred*. The contract must be so construed as to be reciprocal in its operation. If the plaintiff would not be entitled to a dividend on these notes, he should not be barred by the release.

The provision in the indenture for rectifying errors in the schedules, by the consent of one of each of the three contracting parties, can have no effect upon the construction of the instrument. If a debt was not originally included in the contract, a creditor would not be bound to introduce it; nor would the debtors, or the assignees, or the other creditors, be under obligation to admit it. In the exercise of this right, the assignees have refused to allow the claim in suit to be introduced; so that the indenture must be construed without reference to this provision, which the assignees themselves have ejected.

To ascertain the intention of the parties, which always must govern in the construction of all contracts, we must look to the whole instrument, to all its provisions, and to such extrinsic subjects, as it was intended to operate upon. And in this view we can entertain no doubt of the real meaning of the parties. *Lyman, Judge*, v. *Clark*, 9 Mass. R. 235. And in the examination of this subject, we are happy to find, that whether we adhere to a strict construction of the language, or regard more general, equitable considerations, we are brought to the same conclusion.

*Defendants defaulted.*